[redacted]

RECEIVED
MAY 05 2026
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE GRAND JURY SUBPOENAS AND NONDISCLOSURE ORDER BEARING USAO CASE # 2026R00046 | Case No.<br><br>**FILED UNDER SEAL** |

# GOOGLE LLC'S MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR MODIFY NONDISCLOSURE ORDER AND TO STAY COMPLIANCE WITH SUBPOENAS

## TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 3
A. The Government's Prospective Nondisclosure Order .......... 3
B. The Government's Subpoenas to Google .......... 7
C. Google's Commitment To Transparency In Safeguarding User Data .......... 8
LEGAL STANDARD .......... 9
ARGUMENT .......... 10
I. THE NDO VIOLATES SECTION 2705(b) .......... 10
A. Section 2705(b) Does Not Authorize Prospective NDOs .......... 11
B. The NDO Was Not Justified Under Section 2705(b) At The Time It Was Attached To The Subpoenas .......... 14
II. THE NONDISCLOSURE ORDER TRIGGERS AND FAILS STRICT SCRUTINY UNDER THE FIRST AMENDMENT .......... 16
III. THE COURT SHOULD STAY GOOGLE'S DEADLINE TO COMPLY WITH THE SUBPOENAS .......... 20
CONCLUSION .......... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) .......... 17, 18

*Bruno v. Hamilton*,
521 F.2d 114 (8th Cir. 1975) .......... 9

*Douglas v. Brownell*,
88 F.3d 1511 (8th Cir. 1996) .......... 20

*Free Speech Coalition, Inc. v. Paxton*,
606 U.S. 461 (2025) .......... 16

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) .......... 9

*Google LLC v. United States*,
443 F. Supp. 3d 447 (S.D.N.Y. 2020) .......... 20

*In re Grand Jury Subpoena to Facebook*,
2016 WL 9274455 (E.D.N.Y. May 12, 2016) .......... 14

*In re Grand Jury Subpoena to Google Inc.*,
2017 WL 4862780 (E.D.N.Y. Oct. 26, 2017) .......... 15

*In re Green Grand Jury Proceedings*,
492 F.3d 976 (8th Cir. 2007) .......... 21

*In re Sealed Case*,
77 F.4th 815 (D.C. Cir. 2023) .......... 20

*In re Sealed Case*,
144 F.4th 329 (D.C. Cir. 2025) .......... 2, 10, 11, 12, 13, 14, 15

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
562 F. Supp. 2d 876 (S.D. Tex. 2008) .......... 16

*Matter of Search Warrant for [redacted].com*,
248 F. Supp. 3d 970 (C.D. Cal. 2017) .......... 16

*Matter of Subpoena 2018R00776*,
947 F.3d 148 (3d Cir. 2020) .......... 16

*McCullen v. Coakley*,
573 U.S. 464 (2014) .......... 18

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 17

*Republican Party of Minnesota v. White*,
416 F.3d 738 (8th Cir. 2005) (en banc) .......... 17

*Riley v. National Federation of the Blind of N.C., Inc.*,
487 U.S. 781 (1998) .......... 19

*Thomas v. Arn*,
474 U.S. 140 (1985) .......... 9

*Thompson v. Western States Medical Center*,
535 U.S. 357 (2002) .......... 20

*United States v. Alvarado*,
840 F.3d 184 (4th Cir. 2016) .......... 21

*United States v. Apollomedia Corp.*,
2000 WL 34524449 (5th Cir. June 2, 2000) .......... 14

*United States v. Calk*,
87 F.4th 164 (2d Cir. 2023) .......... 21

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000) .......... 18, 20

*United States v. Wadlington*,
233 F.3d 1067 (8th Cir. 2000) .......... 21

**Docketed Cases**

*Chatrie v. United States*, No. 25-112 (U.S.) .......... 9

*In re Google LLC's Motion to Vacate Indefinite Non-Disclosure Provision of Order Authorizing the Installation and Use of Pen Register and Trap and Trace Device*,
No. 26-mc-00018-GPG (D. Colo.) .......... 8

*In re United States*, No. 26-1135 (8th Cir.) .......... 7

*Microsoft Corp. v. Superior Ct.*, No. S295356 (Cal.) .......... 9

*United States v. Armstrong*, No. 0:26-cr-25 (D. Minn.) .......... 3, 4, 5, 15, 16

**Statutes**

18 U.S.C.
§ 2510(15) .......... 3
§ 2703 .......... 1, 10
§ 2704(a)(1) .......... 15, 16, 19
§ 2705(b) .......... 1, 10, 11, 12, 13, 14, 17
§ 2711(2) .......... 3
§ 3142(b) .......... 16
§ 3142(c) .......... 16

**Other Authorities**

Assistant Attorney General Harmeet Dhillon (@AAGDhillon), X.com (Jan. 18, 2026, 4:38 PM), https://x.com/AAGDhillon/status/2013003168179724426 .......... 5

Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 9:28 AM), https://x.com/AGPamBondi/status/2014344323706302566 .......... 5

Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 9:50 AM), https://x.com/AGPamBondi/status/2014349963132543319?s=20 .......... 5

Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 1:07 PM), https://x.com/AGPamBondi/status/2014399597335269553 .......... 5

Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 30, 2026, 9:09 AM), https://x.com/AGPamBondi/status/2017238803639845115 .......... 6

Attorney General Pamela Bondi (@AGPamBondi), X.com (Feb. 2, 2026, 9:10 AM), https://x.com/AGPamBondi/status/2018326184468058566 .......... 6

Attorney General Pamela Bondi (@AGPamBondi), X.com (Feb. 27, 2026, 1:25 PM), https://x.com/AGPamBondi/status/2027449934337696099 .......... 6

Charlie Savage & Katie Benner, *U.S. Waged Secret Legal Battle To Obtain Emails of 4 Times Reporters*, N.Y. Times (June 9, 2021), https://www.nytimes.com/2021/06/04/us/politics/times-reporter-emails-gag-order-trump-google.html .......... 9

DHS, *DHS Arrests 3 Ringleaders of St. Paul Church Riot for Federal Crimes* (Jan. 23, 2026), https://www.dhs.gov/news/2026/01/23/dhs-arrests-3-ringleaders-st-paul-church-riot-federal-crimes .......... 6

Ernesto Londoño, *Don Lemon Pleads Not Guilty in Minnesota Church Protest Case*, N.Y. Times (Feb. 13, 2026), https://www.nytimes.com/2026/02/13/us/don-lemon-plea-minnesota-church-protest-case.html ........ 6

Hannah Rabinowitz & Kara Scannell, *Judge Rejects Justice Department's Initial Attempt To Bring Charges Against Don Lemon*, CNN (Jan. 22, 2026), https://www.cnn.com/2026/01/22/politics/don-lemon-justice-department-minnesota ........ 6

Katie Hafner & Matt Richtel, *Google Resists U.S. Subpoena Of Search Data*, N.Y. Times (Jan. 20, 2006), https://www.nytimes.com/2006/01/20/technology/google-resists-us-subpoena-of-search-data.html ........ 9

Kent Walker, *It's Time For More Transparency Around Government Data Demands*, Google (June 23, 2022), https://blog.google/company-news/outreach-and-initiatives/public-policy/its-time-for-more-transparency-around-government-data-demands/ ........ 8

Mary Bell, *Justice Dept. Charges 30 More People Over Anti-ICE Protest At Minnesota Church*, Wash. Times (Feb. 27, 2026), https://www.washingtontimes.com/news/2026/feb/27/justice-department-charges-30-people-anti-ice-protest-minnesota/ ........ 6

Rachel Leingang, *A Journalist Filmed An ICE Protest At A Minnesota Church. Then Federal Agents Showed Up At Her Door*, The Guardian (Apr. 16, 2026), https://www.theguardian.com/us-news/2026/apr/16/minnesota-journalist-charged-ice-protest ........ 7

Ryan Barber et al., *Don Lemon Arrested Over Church Protest*, Wall St. J. (Jan. 30, 2026), https://www.wsj.com/us-news/law/don-lemon-arrested-over-church-protest-942333ee ........ 6

*Requests for User Information FAQs*, Google, https://support.google.com/transparencyreport/answer/9713961?hl=en (visited May 5, 2026) ........ 8

Secretary Kristi Noem (@KristiNoem), X.com (Jan. 22, 2026, 10:23 AM), https://x.com/KristiNoem/status/2014358158588723399 ........ 5

U.S. Dep't of Justice, Justice Manual § 9-11.120 (updated Jan. 2026) ........ 21

U.S. Dep't of Justice, *Supplemental Policy Regarding Applications for Protective Order Pursuant to 18 U.S.C. § 2705(b)* (May 27, 2022), https://www.justice.gov/archives/dag/file/1221126-0/dl?inline ............................ 14, 19

## INTRODUCTION

Google LLC ("Google") is committed to maintaining the privacy and security of user data. Google strives to communicate transparently with its users when their data is requested by law enforcement. In keeping with those values, Google challenges court orders that improperly impede Google's ability to communicate with its users about law enforcement requests when there appears to be an insufficient basis to compel nondisclosure.

Here, the government served on Google eight grand jury subpoenas under the Stored Communications Act, 18 U.S.C. § 2703. *See* Holtzblatt Decl. Exs. 3-10 (the "Subpoenas"). The Subpoenas seek subscriber information for two Gmail accounts and six YouTube accounts (the "Target Accounts"). Based on public reporting, the apparent owners of many of those accounts are individuals who have been publicly linked to events that occurred at Cities Church in St. Paul, Minnesota on January 18, 2026. In addition, the government obtained a nondisclosure order (the "NDO") that prohibits Google from notifying anyone, including the apparent owners of the Target Accounts, about the Subpoenas for a period of one year. Holtzblatt Decl. Ex. 1. The government obtained the NDO on the government's representation that if Google disclosed the existence of the Subpoenas, it would seriously jeopardize the investigation by causing destruction of evidence or flight from prosecution. *See* NDO at 6; 18 U.S.C. § 2705(b).

However, the NDO was obtained in January 2026, more than two months before the government served the Subpoenas on Google. The NDO purported to empower the government to compel nondisclosure of any future, hypothetical subpoena in the course

of the government's investigation, without any further review by the court. And changing facts over the two months between when the government obtained the NDO and when it served the Subpoenas eliminated whatever rationale might have initially justified the NDO. During the intervening months:

- Many of the apparent owners of the Target Accounts were arrested, indicted, and appeared in court.
- The Department of Justice ("DOJ") unsealed the indictment and superseding indictment and issued many public announcements about its investigation into the events at Cities Church.
- The investigation and court proceedings have received extensive media attention.

The apparent owners of the Target Accounts—and the public at large—clearly know about the investigation. As a result, the government has no ongoing legal justification to prohibit Google from notifying the apparent owners of the Target Accounts about the Subpoenas. And more fundamentally, the Stored Communications Act requires a court to determine whether nondisclosure is necessary for each subpoena; it does not permit "outsourc[ing] to the government the very evaluation that Congress assigned to the court." *In re Sealed Case*, 144 F.4th 329, 335 (D.C. Cir. 2025). The Act therefore forbids the kind of prospective NDO that the government used here, which permits the government to unilaterally decide that it can order nondisclosure even when the legal justification for nondisclosure no longer exists. For both these reasons, Google respectfully moves the Court to vacate the NDO.

Google also respectfully requests that the Court exercise its discretion to stay compliance with the Subpoenas until it resolves Google's challenge to the NDO and

permits the account users the opportunity to challenge the Subpoenas as they deem appropriate. Requiring Google to comply with the Subpoenas before the Court rules on Google's challenge to the NDO will undermine Google's important interest in communicating with its users and will deprive those users of the opportunity to even consider—let alone raise—objections to the Subpoenas.

## BACKGROUND

### A. The Government's Prospective Nondisclosure Order

On January 29, 2026, a grand jury returned a sealed indictment against several individuals, including the apparent owners of several of the Target Accounts, based on the events at the Cities Church in St. Paul, Minnesota. *See United States v. Armstrong*, No. 0:26-cr-25, Dkt. 39 (D. Minn. Jan. 29, 2026). The defendants were charged with conspiracy against the right of religious freedom at a place of worship and with injuring, intimidating, and interfering with exercise of the right of religious freedom at a place of worship. *See id.*

Also on January 29, 2026, Magistrate Judge Jon T. Huseby issued the NDO. *See* NDO at 7. On the date the NDO was issued, the government's indictment remained sealed. *See Armstrong*, Dkt. 48 (D. Minn. Jan. 29, 2026) (granting the government's motion to seal). The NDO does not reference any particular subpoena or any particular recipient. It contains only a reference number for a grand jury investigation. The NDO states that the government "request[ed] that the Court enter a non-disclosure order commanding providers of electronic communications services, as defined by 18 U.S.C. § 2510(15), and/or remote computing services, as defined by 18 U.S.C. § 2711(2),

(collectively, the "Service Providers"), not to notify any person (including the subscriber(s) or customer(s) of the account(s) identified in the subpoenas) of the existence of the grand jury subpoenas issued in this grand jury investigation for a one-year period." NDO at 6.

"Based on the application and the record before the Court," the NDO states, "the Court determines that there is reason to believe that notification of the existence of these grand jury subpoenas will seriously jeopardize the investigation, including by causing flight from prosecution, causing the destruction of or tampering with evidence, and otherwise seriously jeopardizing the investigation." *Id.*

The NDO accordingly orders "that the Service Providers … shall not disclose in any manner … the existence or contents of the … subpoenas, the government's application, and this Non-Disclosure Order to the subscriber(s) or customer(s) of the account(s) identified in the subpoenas, or to any other person or entity[.]" NDO at 6-7. This blanket prohibition lasts "until January 28, 2027," with the NDO contemplating a further "exten[sion] by a further Order of the Court." *Id.* at 7.

On January 30, 2026, the day after Judge Husbey signed the NDO, the court unsealed the *Armstrong* indictment at the government's request. *See Armstrong*, Dkt. 54 (D. Minn. Jan. 30, 2026). The unsealed indictment named several individuals who are apparent owners of some of the Target Accounts. For example, the Target Accounts include the YouTube channels or Gmail accounts for Don Lemon, Georgia Fort, William Kelly and Trahern Crews, all of whom were indicted. Holtzblatt Decl. Exs. 3-5, 8, 10. Each of those individuals hired counsel, and each was arrested, released on bond, and

arraigned between late January and mid-February. *See Armstrong*, Dkts. 27, 61, 83, 115, 124, 128-129.

On February 26, 2026, the grand jury returned a superseding indictment adding more than three dozen defendants. *Armstrong*, Dkt. 144 (D. Minn. Feb. 26, 2026). The superseding indictment was subsequently unsealed. *See id.* Dkt. 178 (D. Minn. Feb. 27, 2026). This criminal case is ongoing, with counsel for the defendants—including several of the apparent owners of the Target Accounts—making regular court appearances. *See, e.g.*, *id.* Dkt. 491 (D. Minn. Apr. 10, 2026) (joint motion from Trahern Crews, William Kelly, and other defendants); *id.* Dkt. 500 (D. Minn. Apr. 20, 2026) (motion from Don Lemon); *id.* Dkt. 502 (D. Minn. Apr. 21, 2026) (response from Georgia Fort).

Both before and after the NDO was issued on January 29, 2026, the government actively publicized the investigation. On the day of the events at Cities Church, the head of DOJ's Civil Rights Division stated that the government was investigating whether those involved had committed federal crimes.[1] On January 22, both the Attorney General and the Secretary of Homeland Security announced in a series of posts on X that individuals present at Cities Church had been arrested.[2] The next day, the Department of

---

[1] Assistant Attorney General Harmeet Dhillon (@AAGDhillon), X.com (Jan. 18, 2026, 4:38 PM), https://x.com/AAGDhillon/status/2013003168179724426.

[2] Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 9:28 AM), https://x.com/AGPamBondi/status/2014344323706302566; Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 9:50 AM), https://x.com/AGPamBondi/status/2014349963132543319?s=20; Secretary Kristi Noem (@KristiNoem), X.com (Jan. 22, 2026, 10:23 AM), https://x.com/KristiNoem/status/2014358158588 723399; Attorney General Pamela

Homeland Security ("DHS") issued a press release announcing that the government had arrested William Kelly, the apparent owner of some of the Target Accounts.[3] And on January 30, the Attorney General announced that Don Lemon, Trahern Crews, and Georgia Fort—also apparent owners of Target Accounts—had been arrested as well.[4] Over the next month, the Attorney General continued to speak on social media about the progress of the investigation and criminal case.[5]

Media outlets have also reported on every stage of the proceeding, from the government's initial applications for arrest warrants to the defendants' eventual arrest and arraignment.[6] As Chief Judge Schiltz observed in separate proceedings, the

---

Bondi (@AGPamBondi), X.com (Jan. 22, 2026, 1:07 PM), https://x.com/AGPamBondi/status/2014399597335269553.

[3] *See, e.g.*, DHS, *DHS Arrests 3 Ringleaders of St. Paul Church Riot for Federal Crimes* (Jan. 23, 2026), https://www.dhs.gov/news/2026/01/23/dhs-arrests-3-ringleaders-st-paul-church-riot-federal-crimes.

[4] Attorney General Pamela Bondi (@AGPamBondi), X.com (Jan. 30, 2026, 9:09 AM), https://x.com/AGPamBondi/status/2017238803639845115.

[5] *See, e.g.*, Attorney General Pamela Bondi (@AGPamBondi), X.com (Feb. 2, 2026, 9:10 AM), https://x.com/AGPamBondi/status/2018326184468058566; Attorney General Pamela Bondi (@AGPamBondi), X.com (Feb. 27, 2026, 1:25 PM), https://x.com/AGPamBondi/status/2027449934337696099.

[6] *See, e.g.*, Hannah Rabinowitz & Kara Scannell, *Judge Rejects Justice Department's Initial Attempt To Bring Charges Against Don Lemon*, CNN (Jan. 22, 2026), https://www.cnn.com/2026/01/22/politics/don-lemon-justice-department-minnesota; C. Ryan Barber et al., *Don Lemon Arrested Over Church Protest*, Wall St. J. (Jan. 30, 2026), https://www.wsj.com/us-news/law/don-lemon-arrested-over-church-protest-942333ee; Ernesto Londoño, *Don Lemon Pleads Not Guilty in Minnesota Church Protest Case*, N.Y. Times (Feb. 13, 2026), https://www.nytimes.com/2026/02/13/us/don-lemon-plea-minnesota-church-protest-case.html; Mary Bell, *Justice Dept. Charges 30 More People Over Anti-ICE Protest At Minnesota Church*, Wash. Times (Feb. 27, 2026),

government's investigation in this matter has received "widespread international attention." *In re United States*, No. 26-1135, Doc. 5600654 at 4, Ltr. From Hon. Patrick J. Schiltz to Hon. Steven M. Colloton (8th Cir. Jan. 23, 2026).

### B. The Government's Subpoenas to Google

On April 3, 2026, Google received an administrative subpoena from ICE's Homeland Security Investigations ("HSI") that sought subscriber information for a dozen accounts. Holtzblatt Decl. Ex. 2. The ICE administrative subpoena targeted many of the Target Accounts as well as additional accounts. Google objected to the ICE administrative subpoena and did not produce data. After Google's objection, the government neither withdrew nor defended the ICE administrative subpoena.

Instead, the government began serving Google with the Subpoenas at issue here: grand jury subpoenas seeking subscriber information for user accounts under the Stored Communications Act. Google received the first grand jury subpoena on April 9, 2026, directed at Don Lemon's YouTube page, *The Don Lemon Show*. Holtzblatt Decl. Ex. 3. On April 14, Google received seven more subpoenas for the remaining Target Accounts. Holtzblatt Decl. Exs. 4-10.[7]

---

https://www.washingtontimes.com/news/2026/feb/27/justice-department-charges-30-people-anti-ice-protest-minnesota/; Rachel Leingang, *A Journalist Filmed An ICE Protest At A Minnesota Church. Then Federal Agents Showed Up At Her Door*, The Guardian (Apr. 16, 2026), https://www.theguardian.com/us-news/2026/apr/16/minnesota-journalist-charged-ice-protest.

[7] The grand jury Subpoenas did not seek information for several of the accounts included in the original ICE administrative subpoena.

Although each of the Subpoenas was issued in April 2026, the government attached to the Subpoenas the NDO that had been issued on January 29, 2026.

**C. Google's Commitment To Transparency In Safeguarding User Data**

Google is committed to protecting its users' data and has a long history of seeking to notify those users about law enforcement requests for their data.[8] Google was the first major technology company to publish a Transparency Report on government requests for user data, and Google has advocated for passage of the bipartisan NDO Fairness Act, which would impose sensible limitations on the government's use of NDOs.[9]

Google complies with lawful law enforcement requests, which make up the vast majority of the requests it receives each year. At the same time, Google challenges improper NDOs attached to law enforcement requests. For example, earlier this year Google successfully challenged a federal nondisclosure order that purported to bar Google from ever notifying a user.[10] Google and Amazon have filed an amicus brief in support of Microsoft's litigation before the California Supreme Court arguing that strict

---

[8] *See Requests for User Information FAQs*, Google, https://support.google.com/transparencyreport/answer/9713961?hl=en (visited May 5, 2026).

[9] *See* Kent Walker, *It's Time For More Transparency Around Government Data Demands*, Google (June 23, 2022), https://blog.google/company-news/outreach-and-initiatives/public-policy/its-time-for-more-transparency-around-government-data-demands/.

[10] Mot. to Vacate Indefinite Non-Disclosure Order, *In re Google LLC's Motion to Vacate Indefinite Non-Disclosure Provision of Order Authorizing the Installation and Use of Pen Register and Trap and Trace Device*, No. 26-mc-00018-GPG (D. Colo. Jan. 30, 2026).

scrutiny should apply to nondisclosure orders.[11] And Google successfully challenged the government's efforts to obtain the email logs of journalists under an NDO that prevented disclosure to the targets of the subpoena.[12] Google also challenges invalid legal demands. For example, between 2022 and 2024, Google challenged thousands of unconstitutional geofence warrants.[13] And Google successfully challenged the government's efforts to subpoena the search histories of millions of Americans.[14]

## LEGAL STANDARD

The Court may vacate or modify the orders of a magistrate judge. *See Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975); *accord Thomas v. Arn*, 474 U.S. 140, 153-154 (1985) ("[T]he district court … must exercise supervision over the magistrate[.]").

---

[11] Amicus Curiae Letter of Google LLC and Amazon.com, Inc. in Support of Petition for Review, *Microsoft Corp. v. Superior Ct.*, No. S295356 (Cal. Mar. 16, 2026).

[12] Charlie Savage & Katie Benner, *U.S. Waged Secret Legal Battle To Obtain Emails of 4 Times Reporters*, N.Y. Times (June 9, 2021), https://www.nytimes.com/2021/06/04/us/politics/times-reporter-emails-gag-order-trump-google.html.

[13] *See* Brief for Amicus Curiae Google LLC in Support of Neither Party 1, *Chatrie v. United States*, No. 25-112 (U.S. Mar. 2, 2026).

[14] Katie Hafner & Matt Richtel, *Google Resists U.S. Subpoena Of Search Data*, N.Y. Times (Jan. 20, 2006), https://www.nytimes.com/2006/01/20/technology/google-resists-us-subpoena-of-search-data.html; *see Gonzales v. Google, Inc.*, 234 F.R.D. 674, 678, 688 (N.D. Cal. 2006).

## ARGUMENT

### I. THE NDO VIOLATES SECTION 2705(b)

The Court should vacate the NDO because it does not comply with the narrow, statutorily defined circumstances under which the government can displace the Stored Communication Act's presumption in favor of disclosure of government requests for user records. Under the Act, "government requests for user communications and user records are presumptively public." *In re Sealed Case*, 144 F.4th at 331. "When the government seeks a user's data, the service provider is typically allowed to notify that user." *Id.* (citing 18 U.S.C. § 2703).

Section 2705(b) authorizes the government to "apply to a court for an order commanding a provider of electronic communications service … to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." 18 U.S.C. § 2705(b). But the court may only "enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.*

Here, the NDO fails to satisfy the requirements of Section 2705(b). First, the NDO applies prospectively to any future, hypothetical subpoena issued in this investigation for a year, improperly delegating to the government the court's duty to

determine that there is "reason to believe" that disclosure of a particular subpoena will result in harm. *Id.* Second, the government cannot justify prohibiting disclosure of these Subpoenas because in the months since the government obtained the NDO, the factual bases supporting the NDO have changed and the investigation has become so public that there is no reasonable ground to conclude that one of the statutorily enumerated harms will result from disclosure.

**A. Section 2705(b) Does Not Authorize Prospective NDOs**

A prospective NDO cannot comply with Section 2705(b)'s text. The statute "requires that a *court* make a 'reason to believe' determination for any subpoena (or other legal document) covered by its order." *In re Sealed Case*, 144 F.4th at 333 (emphasis added). And Section 2705(b) specifies that the determination the court must make is whether disclosure of "the ... subpoena" will seriously jeopardize the investigation. *See* 18 U.S.C. § 2705(b). A court cannot find that disclosure of "the … subpoena" will harm the investigation if "the ... subpoena" in question does not yet exist and is thus not before the court. Moreover, factual circumstances often change over the course of a year; secrecy that may be paramount at the start of an investigation may become unnecessary once the public "learn[s] of the government's investigation." *In re Sealed Case*, 144 F.4th at 334. A prospective NDO "effectively require[s] the government to decide—before attaching the nondisclosure order to any given subpoena—that disclosure of the subpoena would risk one of the harms listed in Section 2705(b)." *Id.* at 332. By granting the government prior authorization to attach an NDO to subpoenas that do not yet exist, a

prospective NDO necessarily "outsource[s] to the government the very evaluation that Congress assigned to the court." *Id.* at 335.

Two features of the prospective NDO rejected by the D.C. Circuit in *In re Sealed Case* illustrate the fundamental conflict with the statute. First, even though the order in that case "prospectively" "allow[ed] the government to use the nondisclosure order for a full year," the magistrate had not offered "'reason to believe' that risk of harm would still exist for a subpoena issued many months later." *In re Sealed Case*, 144 F.4th at 334. It was not enough for the magistrate to conclude that there was "reason to believe" harm would result based on "the facts as they were when the government submitted its application" for the nondisclosure order. *Id.* Second, the magistrate "provided no meaningful limit on the potential targets of the future subpoenas." *Id.* Instead, the magistrate allowed the government to "attach the nondisclosure order to any subpoena for user records of any account with any service provider that [the government] decided was relevant to its investigation"—even subpoenas targeting "peripheral" players in the investigation and subpoenas "the government could not foresee when it requested" the order. *Id.* at 334-335. If a prospective NDO could ever be lawful—and the D.C. Circuit expressed skepticism that it could—such an order would at least need "clear[] limitations" to address these two problems. *Id.* at 335-336.

The NDO in this case violates Section 2705(b) for the same reasons identified by the D.C. Circuit in *In re Sealed Case*. Here, the government requested, and the court granted, a nondisclosure order "commanding providers of electronic communication services, as defined by [the Stored Communications Act] … not to notify any person

(including the subscriber(s) or customer(s) of the account(s) identified in the subpoenas) of the existence of the grand jury subpoenas issued in this grand jury investigation for a one-year period." NDO at 6. Just like the order in *In re Sealed Case*, this is a "generic Section 2705(b) nondisclosure order commanding the unspecified 'recipient of the attached subpoena' not to disclose the existence of that subpoena." 144 F.4th at 331. And just like the order in *In re Sealed Case*, the NDO here facially "permit[s] the government to attach [it] to all subpoenas for user records issued in connection with a specified investigation over the next year." *Id.* The government alone is left to evaluate, "as its investigation evolve[s]," whether the new and even "unforeseen" subpoenas it drafts can be shielded from disclosure based on the statutory harms enumerated in Section 2705(b), a determination the government makes "without coming back to the court." *Id.* at 334.

Moreover, the NDO here has neither of the "clear[] limitations" that the D.C. Circuit required. *In re Sealed Case*, 144 F.4th at 336. The order cites no grounds to support the conclusion that, "[b]ased on the application and the record before the Court" in January 2026, that the court had "reason to believe" that harm would result from disclosure of a not-yet-existent subpoena issued in April 2026—or of a hypothetical future subpoena that might be served in December 2026 or January 2027. The order thus fails to "address how the court's 'reason to believe' applied to subpoenas that might be issued months in the future." 144 F.4th at 335. And the order applies to *any* of "the grand jury subpoenas issued in this grand jury investigation for a one-year period." NDO at 6-7. It thus does not "identify the types of subpoenas to which its order can apply,"

meaning it could not have "explain[ed] why it has reason to believe disclosure of those potential subpoenas will cause harm." *In re Sealed Case*, 144 F.4th at 334.

As in *In re Sealed Case*, the prospective NDO issued here is facially invalid.

### B. The NDO Was Not Justified Under Section 2705(b) At The Time It Was Attached To The Subpoenas

The facts of this case underscore precisely why the D.C. Circuit found prospective nondisclosure orders problematic. Harms that a court has reason to believe exist one day may become stale months later. *See In re Grand Jury Subpoena to Facebook*, 2016 WL 9274455, at *4 (E.D.N.Y. May 12, 2016); *United States v. Apollomedia Corp.*, 2000 WL 34524449, at *2-3 (5th Cir. June 2, 2000) ("[I]t appears that the reason for the initial order to protect the integrity of a criminal investigation no longer applies."). Indeed, the Department of Justice recognizes that "as investigations progress or become public … case or other developments may reduce the likelihood of adverse results" from disclosure. U.S. Dep't of Justice, *Supplemental Policy Regarding Applications for Protective Order Pursuant to 18 U.S.C. § 2705(b)*, at 2 (May 27, 2022), https://www.justice.gov/archives/dag/file/1221126-0/dl?inlin.

Here, subsequent events have negated any possible justification for the NDO that the court issued three months ago on January 29, 2026. The order finds that disclosure of the Subpoenas will seriously jeopardize the government's investigation, citing the risks of flight from prosecution and destruction of evidence. NDO at 6. But those concerns cannot possibly exist today. The investigative targets for whom the Subpoenas seek subscriber information already know they are under investigation because the

government is publicly prosecuting them. *See supra* pp.4-5. The government itself has repeatedly publicized its own investigation. *See supra* pp.5-7. And the government confirmed that it no longer needed to keep its prosecution of these individuals secret by moving to unseal the original indictment in this case and by filing and immediately moving to unseal a superseding indictment. *See supra* pp.4-5. Where, as here, "investigative targets … know of the investigation's existence," "the risk already exists that such targets will take steps to flee, alter or destroy evidence, or otherwise impede the investigation's progress." *In re Grand Jury Subpoena to Google Inc.*, 2017 WL 4862780, at *2 (E.D.N.Y. Oct. 26, 2017). No legitimate purpose can be served by silencing Google now.

Moreover, the government's investigation has unfolded in ways that considerably alter the court's initial calculus that statutory harm will result from disclosure since the prospective NDO here issued on January 29. *See In re Sealed Case*, 144 F.4th at 334. After the magistrate issued the order, the government filed a superseding indictment adding dozens more defendants. *See Armstrong*, Dkt. 144 (D. Minn. Feb. 26, 2026). That development diminishes the risk that disclosure would seriously jeopardize an investigation into unindicted coconspirators, while elevating the risk that the government can use the order to restrict disclosure of "requests targeting those who played a merely peripheral role in the scheme" described to the court in the government's initial application. *In re Sealed Case*, 144 F.4th at 334.

Other developments further undermine the basis for the NDO. As to safeguarding evidence, Google has already preserved responsive evidence consistent with 18 U.S.C.

§ 2704(a)(1). And as to risk of flight, the court overseeing the criminal prosecutions of Don Lemon, Georgia Fort, Trahern Crews, and William Kelly has released them without requiring a bond. *See Armstrong*, Dkt. 27 (William Kelly); *id.* Dkt. 58 (Trahern Crews); *id.* Dkt. 61 (Georgia Fort); *id.* Dkt. 117 (Don Lemon). In releasing these individuals on these terms, the court necessarily determined that there was no reason to believe that bonds or further release conditions were needed to "assure the appearance of the person as required" or to protect "the safety of any other person or the community." 18 U.S.C. § 3142(b), (c).

Even if the NDO was appropriate on January 29 when the indictment was not yet public, it is no longer warranted months after the indictment and superseding indictment have become public at the government's request. If public knowledge of the government's investigation puts the investigation in jeopardy, that harm has already been done. Silencing Google cannot mitigate any risk that the well-publicized targets of the government's investigation will flee or tamper with evidence.

## II. THE NONDISCLOSURE ORDER TRIGGERS AND FAILS STRICT SCRUTINY UNDER THE FIRST AMENDMENT

The NDO also violates the First Amendment. The NDO is a content-based prior restraint to which strict scrutiny applies under the First Amendment. *See, e.g.*, *Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 980-982 (C.D. Cal. 2017); *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 881-883 (S.D. Tex. 2008). Strict scrutiny is "the most demanding test known to constitutional law." *Free Speech*

*Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (citation omitted). Under strict scrutiny, the NDO is presumptively unlawful unless the government "prove[s]" that it (1) "furthers a compelling interest" and (2) "is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (citation omitted). For many of the same reasons that the NDO cannot satisfy Section 2705(b), it cannot satisfy this standard.

*First*, the very same circumstances that undercut the magistrate's "reason to believe" determination under Section 2705(b) mean that the government cannot show that the NDO serves a compelling interest. A compelling interest requires the government to identify "an 'actual problem' in need of solving" and to show a "high degree of necessity" in solving it. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799, 804 (2011). One telltale sign that the government lacks a compelling interest is "where the regulation fails to address significant influences that impact the purported interest." *Republican Party of Minnesota v. White*, 416 F.3d 738, 750 (8th Cir. 2005) (en banc). Here, the NDO purports to protect the integrity of the government's investigation from the risk of "flight from prosecution, … the destruction of or tampering with evidence, and otherwise seriously jeopardizing the investigation." NDO at 6. Although those interests could be compelling in some circumstances, they are not present here. The government's interest in secrecy is belied by its own efforts to publicize the investigation. *See supra* pp.5-7; *White*, 416 F.3d at 750 ("If an interest is compelling enough to justify abridging core constitutional rights," then the government would not leave untouched "significant influences that impact the purported interest." (emphasis

removed)). The apparent owners of the Target Accounts already know about the investigation, so the government cannot claim any need to keep that investigation secret.

*Second*, the prospective nature of the NDO and public nature of this investigation mean that the government cannot show that the NDO is narrowly tailored to any purported compelling interest. Narrow tailoring requires that the order "be the least restrictive means of achieving [the] compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). "If a less restrictive alternative would serve the Government's purpose, the [Government] must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). But here, the court issued an NDO that applies prospectively to any service provider and any subpoena that the government chooses to serve in this investigation. *See supra* 3-4; *see also* NDO at 6-7. It therefore made no finding that it was necessary to suppress Google's speech as to these particular Subpoenas. Indeed, the very nature of a prospective NDO precludes the government from "specifically identify[ing]" an "actual problem" that its speech restriction "actually solves." *Brown*, 564 U.S. at 799-800.

Nor could the government have made such a showing had the magistrate put the government to its burden. The defendants who apparently own the Target Accounts are already aware that they are targets, having been indicted, arrested, and arraigned by the government. *See supra* pp.4-5. And even if ordering nondisclosure somehow served the government's interests in mitigating the risks of flight and evidence destruction, a blanket, year-long prohibition is more restrictive of speech than necessary. At the time the magistrate issued the prospective NDO, the government had not yet unsealed the

indictment (or superseding indictment). Three months later, that is no longer the case. Yet the court never revisited whether its ongoing prohibition was still the least restrictive means to advance the government's interest.

Less restrictive alternatives are readily available. Most notably, the court could have required the government to make an individualized showing as to each subpoena at the time of the request, rather than granting a prospective nondisclosure order. Unlike the process here, that would have required the government to actually prove, not simply assert, a genuine and particularized interest in nondisclosure. To be sure, a prospective nondisclosure order may be more convenient to the government. But the Supreme Court has "emphatically" held "that the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1998).

The government also could have moved to vacate the NDO once its investigation became public. That approach would be consistent with Department of Justice policy, which directs prosecutors to "routinely review the need for § 2705(b) orders in an ongoing investigation or case," and "immediately assess whether there is a basis to maintain any outstanding [NDOs]" when an investigation ends. *Supplemental Policy Regarding Applications for Protective Order Pursuant to 18 U.S.C. § 2705(b)*, at 3. Moreover, if the government were concerned about evidence tampering, it could have required the subpoenas' recipients to create and preserve a backup copy of the electronic communications sought. *See* 18 U.S.C. § 2704(a)(1). When "a plausible, less restrictive alternative" to "a content-based speech restriction" exists, the Government bears "the

obligation to prove that the alternative will be ineffective." *Playboy*, 529 U.S. at 816. Yet there is no evidence "that the Government even considered … alternatives," *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002), much less that those alternatives would be ineffective.

## III. THE COURT SHOULD STAY GOOGLE'S DEADLINE TO COMPLY WITH THE SUBPOENAS

Google also respectfully requests that the Court stay Google's May 5, 2026 deadline to comply with the Subpoenas pending the resolution of Google's challenge to the NDO attached to them. The Court has the discretion to resolve the merits of Google's challenge to the NDO before it orders Google to comply with the Subpoenas. *See, e.g.*, *In re Sealed Case*, 77 F.4th 815, 832 (D.C. Cir. 2023) (explaining that district court "could have resolved" an NDO challenge "simultaneously with the show-cause order" regarding noncompliance with warrant); *Google LLC v. United States*, 443 F. Supp. 3d 447, 455 (S.D.N.Y. 2020) (resolving challenge to nondisclosure order before granting motion to compel production under warrant).

A stay of Google's compliance deadline is warranted because requiring Google to produce the user information sought before the Court resolves Google's challenge to the NDO would also prevent Google from speaking to its users when that speech matters most. *See Douglas v. Brownell*, 88 F.3d 1511, 1523 (8th Cir. 1996) ("'[I]t is often necessary to have one's voice heard promptly, if it is to be considered at all.'"). Once Google complies with the Subpoenas, its users will lose the opportunity to consider, and potentially raise, any applicable challenges to the Subpoenas.

Here, the record suggests that Target Accounts may have colorable challenges to bring. For example, courts have observed the "universal rule" that grand jury subpoenas may not be used to collect evidence against defendants in an ongoing criminal case. *See United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016); *see also In re Green Grand Jury Proceedings*, 492 F.3d 976, 986 (8th Cir. 2007); *United States v. Wadlington*, 233 F.3d 1067, 1074 (8th Cir. 2000). Following the caselaw, the Department of Justice recognizes in its Justice Manual that "the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted." U.S. Dep't of Justice, Justice Manual § 9-11.120 (updated Jan. 2026). Here, where the grand jury has already returned an indictment—and indeed, a superseding indictment—against several of the apparent owners of the Target Accounts, those individuals may determine that the Subpoenas are "not designed to elicit testimony that will inform an indictment or the decision not to indict or to supersede the indictment." *See United States v. Calk*, 87 F.4th 164, 187 (2d Cir. 2023).

Google's interests in providing timely information to its users and giving its users the opportunity to raise any objections to the Subpoenas thus weigh heavily in favor of a stay of its obligation to comply. On the other hand, no prejudice to the government will result from a brief delay allowing the Court to resolve Google's challenge.

## CONCLUSION

For the foregoing reasons, this Court should vacate the nondisclosure order attached to the April 9 and April 14 Subpoenas. Pending resolution of that issue, the Court should stay Google's May 5 deadline to comply with the Subpoenas.

Dated: May 5, 2026

Respectfully submitted,

*/s/ Joseph T. Dixon*

Joseph T. Dixon, III, MN Bar No. 0283903
FREDRIKSON & BYRON P.A.
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Tel: (612) 492-7000
Fax: (612) 492-7077
jdixon@fredlaw.com

Ari Holtzblatt*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
Ari.Holtzblatt@wilmerhale.com

Claire Guehenno*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
Claire.Guehenno@wilmerhale.com

*Counsel for Google LLC*

*Pro hac vice application forthcoming